FILED
DALLAS COUNTY
5/5/2014 3:40:07 PM
GARY FITZSIMMONS
DISTRICT CLERK

Linda Schaffer

DC-14-04807

CAUSE NO. _____

| | | |
|---|---|---|
| **DARLING INTERNATIONAL INC.,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **JAMES "COREY" GOODE** | § | |
| | § | |
| **Defendant.** | § | 116th  **JUDICIAL DISTRICT** |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Darling International Inc. files this Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and shows the following:

### PARTIES

1.      The Plaintiff, Darling International Inc. ("Darling"), is, and at all times herein mentioned was, a Delaware corporation with a principal place of business located at 251 O'Connor Ridge Blvd., Suite 300, Irving, Texas 75038.

2.      The Defendant, James "Corey" Goode ("Goode"), is, and at all times herein mentioned was, an individual residing in Texas. Upon information and belief, Defendant can be served with process at his residence located at 2715 Forest Grove, Richardson, Texas 75080.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under TEX. CONST. ART. 5, § 8 and GOV'T. CODE § 24.007.

4.      Venue is proper in Dallas County, Texas, because it is the county in which Defendant resided at the time of the accrual of the causes of action. TEX. CIV. PRAC. & REM.

**PLAINTIFF'S VERIFIED ORIGINAL PETITION**
**AND APPLICATION FOR TEMPORARY RESTRAINING**
**ORDER AND TEMPORARY INJUNCTION**

**PAGE 1**

CODE § 15.002.  Further, the acts and omissions giving rise to the claims in this case occurred in Dallas County, Texas.  *Id.*

## DISCOVERY CONTROL PLAN

5.     Discovery should be conducted pursuant to Texas Rule of Civil Procedure 190.4.

## FACTUAL BACKGROUND

6.     Goode was hired on July 29, 2013 to work as a Systems Engineer in Darling's IT Department.  Goode reported directly to Jeremy Current ("Current"), Darling's Cloud and Data Center Manager, who reports to Cooper Wilson ("Wilson"), Darling's Director of Technology.

7.     During his brief tenure with Darling, Goode exhibited performance deficiencies that led to his termination on September 19, 2013.

8.     On September 21, 2013, Goode emailed Human Resources Managers Ryan Schaeffer ("Schaeffer") and Julie Brewster ("Brewster"), listing certain items that Goode claimed were left at his work cubicle and requesting that the items be delivered to him.  Brewster forwarded Goode's September 21, 2013 email to both Current and Wilson on September 23, 2013.

9.     On September 23, 2013, after receipt of Goode's September 21, 2013 email, Current and Wilson visited Goode's work cubical and searched for the items that were listed in Goode's September 21, 2013 email.  None of the listed items were in his work cubicle.  Current and Wilson photographed the items in Goode's cubicle and, with the exception of items like pens, highlighters, and notebooks, boxed up and preserved the items that Goode had left in his work area.  The box was later shipped to Cold Springs, Kentucky where Current's office is located.  On May 5, 2014, Current opened up the box that he and Wilson placed the items from

Goode's cubicle in, inspected its contents and confirmed that all of the items placed in the box remain present.

10.     On May 1, 2014, Goode sent an email to Current, Wilson, and Nick Kemphaus ("Kemphaus"), Darling's Corporate Counsel.  In the email, Goode represented that he had boxed up various items that belonged to Darling that he kept after his termination, and he included a link to a YouTube video that showed him packing the items.  Goode also listed the items that he believed were at his cubicle when he was terminated and again requested that these items be delivered to him.  The items listed in Goode's May 1, 2014 email were the same items that were listed in Goode's September 21, 2013 email to Schaeffer and Brewster, which were not in Goode's cubicle at the time of his termination.

11.     On the afternoon of May 4, 2014, Goode sent another email to Kemphaus, Schaeffer, Current, and Wilson, accusing the Company of vandalizing his property and making "terrorist threats" against him and his family.  Goode's email contained a link to a video that Goode uploaded to YouTube on May 4, 2014 entitled "Darling International Terrorist Threats At Home Of Former Employee 05 04 2014."  The video, which according to Goode was recorded at approximately 9:30 a.m. on May 4, 2014, shows multiple items scattered and broken outside an entryway to a home, including numerous magazines – one of which has a knife pierced through the front cover – a metal backscratcher, a toolkit, a leather portfolio, and other items.  The video also shows a bullet on the threshold to Goode's kitchen window.

12.     In the video, Goode is visibly upset and states, in reference to the alleged activities of the Company, that "this is the last straw."  Goode also says in the video that he is ex-military and suffers from complex Post Traumatic Stress Disorder ("PTSD").

13.     Goode states in the video that he discovered the items shortly before he recorded the video and that he speculates, without explaining any factual basis, that Wilson or former Darling employee David Collins placed the items in front of his house in the early hours of May 4, 2014.  Goode concluded his email by stating "Darling Partners and future prospective Partners will be shocked to see/hear/read some of the behavior that has thus far been allowed to continue in this organization."

14.     Collins no longer works for Darling, and the Company has not yet had an opportunity to speak to him about the video.  The Company has spoken to both Wilson and Current, and both confirmed that they have never been to Goode's home, that they did not visit his house on May 4, 2014, and that they have never placed anything at or near his home.  Wilson and Current also confirmed that they have never seen or possessed any of the items that are shown in Goode's video, that none of those materials were found at Goode's former cubicle, in the office, or otherwise, and were not part of the items that they boxed up after Goode's termination.  Wilson and Current have no knowledge, information or reason to believe that anyone associated with Darling or any current or former employee of Darling had anything whatsoever to do with the situation portrayed in Goode's video that he posted on YouTube on May 4, 2014.

15.     At approximately 11:45 a.m. on May 5, 2014, Darling officials discovered that Goode took down the video that he posted to YouTube on May 4, 2014.  But given the violent nature of the video (e.g., the bullet and knife through the military magazine), coupled with the fact that Goode is ex-military, claims to suffer from PTSD, identifies Darling employees by name and represents that he has reached the "last straw," Darling seeks a temporary restraining order that prohibits Goode from entering onto Darling's property, entering onto the premises of

any off-site meetings of Darling, and from communicating with Darling's current or former employees, directors, or officers as more specifically set forth in the Prayer herein.

## CONDITIONS PRECEDENT

16.     All conditions precedent have been performed by Darling or have otherwise occurred as required by applicable law.

## CAUSE OF ACTION

### COUNT 1:     ASSAULT

17.     Darling incorporates the allegations set forth above as if set forth fully herein.

18.     Darling reasonably fears physical violence and/or contact with its employees, representatives and property based on Goode's posting of the YouTube video.

19.     Goode acted intentionally and/or knowingly.  Goode sent a link of the disturbing YouTube video to Darling.  He claims authorship of the YouTube video and personally appears in it.

20.     The video is threatening and violent in nature and presents a threat of imminent bodily injury.  The video features a bullet as well as a knife pierced through the front cover of a military magazine.  In the video, Goode is distressed, claims that he suffers from "complex Post-Traumatic Stress Disorder" and represents he has reached the "last straw."  Upon information and belief, Good fabricated a scene of alleged vandalism, which he attributes to Darling and questions whether Darling will pay for its alleged conduct.

21.     As a result of Goode's conduct or threatened conduct, Darling has suffered and/or will suffer immediate and irreparable harm and injury for which there is no adequate remedy at law.  Additionally, as a proximate result of this conduct, Darling has suffered monetary damages within the jurisdictional limits of this Court.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER
## AND TEMPORARY INJUNCTION

22.     Darling incorporates the allegations set forth above as if set forth fully herein.

23.     As set forth above, Goode's unlawful acts or threats of unlawful acts are, and are continuing to cause, immediate and irreparable injury and harm to Darling for which there is no adequate remedy at law.

24.     Darling will establish a substantial likelihood of success on the merits of the cause of action in this case for which such a requirement is applicable and necessary for entry of a temporary restraining order, temporary injunction, and/or permanent injunction.

25.     The harm faced by Darling outweighs any harm that would be sustained by Goode if the temporary injunction sought hereby were granted. As set forth in the affidavits attached hereto, Goode has engaged in inappropriate and/or unlawful conduct and made express or implied threats against Darling. The conduct and threats are causing immediate and irreparable harm to Darling. Without a restraining order, Goode will likely continue to engage in this conduct and make threats against Darling, disrupt Darling's operations, destroy Darling's property, and/or engage in other disruptive, unlawful, and/or threatening actions towards Darling. Darling is, therefore, without a complete remedy at law and will suffer irreparable harm if the conduct and threats continue. Therefore, Darling requests a temporary restraining order and injunctive relief described in greater detail in the Prayer, which is incorporated by reference as if set forth fully herein, to protect Darling. Moreover, the issuance of a temporary injunction would not adversely affect the public interest, and Darling is willing to post a bond, to the extent one is necessary and required by the Court.

26.     Accordingly, Darling respectfully asks this Court to enter a temporary restraining order from now until such time as there is a trial on the merits, and subsequently to enter a

permanent injunction, after a trial on the merits, requiring Goode to refrain from committing or threatening to commit the conduct described in the Prayer below.

27.     Greater injury will be inflicted upon Darling by the denial of injunctive relief than would be inflicted upon Goode by granting such relief.

28.     Darling is willing to post a bond as security for the issuance of a temporary injunction, to the extent one is necessary and required by the Court.

## DAMAGES

29.     As a result of Goode's conduct, Darling has been and/or will be damaged. Darling has suffered and/or will suffer both general and special damages.

## PRAYER

WHEREFORE, Darling requests that Goode be cited to appear and answer; and

A.      That this Court issue a temporary restraining order enjoining Goode from committing or threatening to commit any of the following:

1.     Any acts of violence, harm, or harassment against Darling, its officers, employees, directors, board members, attorneys, investors, agents, vendors, clients or customers (collectively, "Protected Parties"), or threatening any such acts of violence, harm, or harassment against Darling or the Protected Parties;

2.     Communicating in a threatening or harassing manner with Darling or the Protected Parties;

3.     Communicating a threat through any person to Darling or the Protected Parties;

**PLAINTIFF'S VERIFIED ORIGINAL PETITION**
**AND APPLICATION FOR TEMPORARY RESTRAINING**
**ORDER AND TEMPORARY INJUNCTION**

**PAGE 7**

    4.      Going within 200 yards of Darling or the Protected Parties, Darling's operations, facilities, or any location at which Darling is conducting business operations or operational meetings of any sort;

    5.      Stalking, following, or engaging in conduct directed specifically to Darling or the Protected Parties, which is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Darling; and

    6.      Disrupting the workplace or operations of Darling by telephoning the office, or faxing or emailing any employee of the office or accessing the computer system of Darling.

B.      This Court set a date for a temporary injunction hearing and, at such time, issue a temporary injunction enjoining Goode from or ordering Goode to refrain from the same acts listed above;

C.      Upon final trial, enter a permanent injunction enjoining Goode from or ordering Goode to refrain from the same acts listed above; and

D.      Award Darling such other and further relief to which Darling may be justly entitled.

Respectfully submitted,

By: /s/ Dan Hartsfield
    Dan Hartsfield
    State Bar No. 09170800
    dan.hartsfield@jacksonlewis.com
    Cynthia Uduebor Washington
    State Bar No. 24047012
    cynthia.washington@jacksonlewis.com
    Justin H. Smith
    State Bar No. 24041943
    justin.smith@jacksonlewis.com

JACKSON LEWIS P.C.
500 North Akard, Suite 2500
Dallas, Texas 75201
Telephone:    (214) 520-2400
Facsimile:    (214) 520-2008

**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF'S VERIFIED ORIGINAL PETITION**
**AND APPLICATION FOR TEMPORARY RESTRAINING**
**ORDER AND TEMPORARY INJUNCTION**

**PAGE 9**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document, *Plaintiff's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*, has been served on all parties of record, by certified mail, return receipt requested on this 5th day of May 2014.

/s/ Dan Hartsfield
Dan Hartsfield

STATE OF TEXAS     §
                        §        V E R I F I C A T I O N

COUNTY OF DALLAS    §

       BEFORE ME, the undersigned Notary Public, on this day personally appeared Cooper Wilson, who, after being duly sworn, stated under oath that he is a duly authorized agent and representative of Darling International Inc., that he has read the Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction and that the facts contained in the Petition are true and correct and within his personal knowledge.

                                            Cooper Wilson

       SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this 5th

day of May, 2014, to certify which witness my hand and official seal.

                                       Notary Public in and for the State of Texas

My Commission Expires:

February 17, 2017

KIMBERLY RACHELLE BEASLEY
My Commission Expires
February 17, 2017

CASE NUMBER _____

| | | |
|---|---|---|
| DARLING INTERNATIONAL INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| JAMES COREY GOODE, | § | |
| | § | |
| Defendant. | § | ___ JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF COOPER WILSON</u>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

On this day personally appeared Cooper Wilson, who, being by me sworn, upon his oath, deposed and stated as follows:

1.      My name is Cooper Wilson.  I am over the age of 18 years, of sound mind, and the information provided herein is true and correct and is based on my personal knowledge.

2.      I am the Director of Technology for Darling International Inc. ("Darling") in Irving, Texas.

3.      James Corey Goode ("Goode") was employed in Darling's Information Technology Department as a Systems Engineer for approximately seven (7) weeks from July 29, 2013 until he was terminated for performance reasons on September 19, 2013.  During his employment, Goode reported directly to Jeremy Current ("Current"), Darling's Cloud and Data Center Manager, who reports to me.

4.      Two days after Goode was terminated, Goode sent an email to Human Resources Managers Ryan Schaeffer and Julie Brewster ("Brewster") listing certain items that Goode claimed were left at his cubicle and requesting that the items be shipped to him.  Brewster

<u>AFFIDAVIT OF COOPER WILSON</u>                                                    PAGE 1

**PLAINTIFF'S EXHIBIT**

**A**

trialtables

forwarded Goode's September 21, 2013 email to me and Current on September 23, 2013.

5.    On September 23, 2013, after we received Goode's September 21, 2013 email from Brewster, Current and I visited Goode's cubical. We searched for the items that were listed in Goode's September 21, 2013 email, but we did not locate any of the items. We took photos of the items in Goode's cubicle and (with the exception of items like pens, highlighters, and notebooks) boxed up and preserved the items that were in Goode's cubicle.

6.    On May 5, 2014, I viewed a video that Goode uploaded to YouTube on May 4, 2014 entitled "Darling International Terrorist Threats At Home Of Former Employee 05 04 2014." The video, which according to Goode was recorded at approximately 9:30 a.m. on May 4, 2014, shows multiple items scattered outside an entryway to a home, including numerous magazines – one of which has a knife pierced through the front cover – a metal backscratcher, a toolkit, a leather portfolio, and other items. The video also shows a bullet on the threshold to Goode's kitchen window. Goode states in the video that he discovered the items shortly before he recorded the video and that he speculates that either I or former Darling employee, David Collins, placed the items in front of his house in the early hours of May 4, 2014.

7.    That statement is false and untrue. I have never been to Goode's home, did not visit his house on May 4, 2014, and have never placed anything on or near his home. I have never seen or possessed any of the items that are shown in Goode's video. None of those materials were found at Goode's former cubicle, in Darling's office, or otherwise, and were not part of the items that we boxed up after his termination. I have no knowledge, information or reason to believe that anyone associated with Darling or any current or former employee of Darling had anything whatsoever to do with the situation portrayed in Goode's video that he posted on YouTube on May 4, 2014.

**AFFIDAVIT OF COOPER WILSON**                                              **PAGE 2**

**FURTHER AFFIANT SAYETH NOT.**

Cooper Wilson

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the 5th day of May, 2014.

Notary Public in and for the State of Texas

My Commission Expires: February 17, 2017

KIMBERLY RACHELLE BEASLEY
My Commission Expires
February 17, 2017

CASE NUMBER _____

| | | |
|---|---|---|
| DARLING INTERNATIONAL INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| JAMES COREY GOODE, | § | |
| | § | |
| Defendant. | § | ___ JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF JEREMY CURRENT</u>

| | |
|---|---|
| **STATE OF KENTUCKY** | § |
| | § |
| **COUNTY OF CAMPBELL** | § |

On this day personally appeared Jeremy Current, who, being by me sworn, upon his oath, deposed and stated as follows:

1.     My name is Jeremy Current.  I am over the age of 18 years, of sound mind, and the information provided herein is true and correct and is based on my personal knowledge.

2.     I am the Cloud and Data Center Manager for Darling International Inc. ("Darling") in Irving, Texas.  My office is in Cold Spring, Kentucky.

3.     James Corey Goode ("Goode") was employed in Darling's Information Technology Department as a Systems Engineer for approximately seven (7) weeks from July 29, 2013 until September 19, 2013.  During his employment, Goode reported directly to me, and he reported indirectly to Cooper Wilson ("Wilson"), Darling's Director of Technology.

4.     Wilson and I notified Goode on September 19, 2013 that he was being terminated for performance reasons.

5.     On September 21, 2013, two days after Goode was terminated, Goode sent an email to Human Resources Managers Ryan Schaeffer and Julie Brewster ("Brewster") listing



certain items that Goode claimed were left at his cubicle and requesting that the items be shipped to him.

6.      Brewster forwarded Goode's September 21, 2013 email to me on September 23, 2013. On September 23, 2013, after we received Goode's September 21, 2013 email from Brewster, Wilson and I visited Goode's cubical. Wilson and I searched for the items that were listed in Goode's September 21, 2013 email when we visited Goode's cubicle on September 23, 2013, but we did not locate any of the items. We took photos of the items in Goode's cubicle and (with the exception of items like pens, highlighters, and notebooks) boxed up and preserved the items that were in Goode's cubicle. Before signing this affidavit, I opened up the box that we placed the items from Goode's cubicle in and confirmed that we still have the items.

7.      On May 4, 2014, I viewed a video that Goode uploaded to YouTube on May 4, 2014 entitled "Darling International Terrorist Threats At Home Of Former Employee 05 04 2014." The video, which according to Goode was recorded at approximately 9:30 a.m. on May 4, 2014, shows multiple items scattered outside an entryway to a home, including numerous magazines – one of which has a knife pierced through the front cover – a metal backscratcher, a toolkit, a leather portfolio, and other items. The video also shows a bullet on the threshold to Goode's kitchen window. Goode states in the video that he discovered the items shortly before he recorded the video and that he speculates that either Wilson or former Darling employee, David Collins, placed the items in front of his house in the early hours of May 4, 2014.

8.      I did not visit Goode's house on May 4, 2014. In fact, I have never been to Goode's house. I did not put those materials on his property and have no knowledge, information or other reason to believe that anyone at Darling did so. I have never seen any of the items that are shown in the video posted by Goode, they have never been in my possession and

**AFFIDAVIT OF JEREMY CURRENT**                                                **PAGE 2**

none of those items were left at Darling after Goode was terminated.

**FURTHER AFFIANT SAYETH NOT.**

_____
Jeremy Current

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the 5th day of May, 2014.

_____
Notary Public, the State of Kentucky

My Commission Expires: _____9/3/16_____

Margaret M. Weinel
Notary Public, ID No. 472382
State at Large, Kentucky
My Commission Expires on Sept. 3, 2016

1

2

3

4

5

6

7

8

9

10

11          Transcription of YouTube Video

12          Recorded by James "Corey" Goode

13                  May 4, 2014

14

15

16

17

18

19

20

21

22

23

24

25  Reported by:  Charlotte Haynsworth, CSR No. 7359





PLAINTIFF'S EXHIBIT C

1        MR. GOODE:  Okay.  It's about 9:30 on the 4th

2   of May.  I've called -- waiting for my family to leave to

3   go to church to call the police.  I asked Darling

4   International to return my property and they did so in

5   their -- in their wonderful way.  There's a little tripod I

6   forgot I even left there.  There's my military magazines

7   all nice.  There's my multitool with a knife stuck through

8   my ripped-up magazines.  That back-scratch tool that we got

9   at the museum that my daughter bought me on Father's -- for

10  a Father's Day gift.  She's gonna be very upset.  I told

11  them that that was sentimental.  Look at that.  My tools.

12  This is not mine, the CD case.  Dell PowerEdge.  There's my

13  zipper thing that I've been wanting.  I'm not touching

14  anything till the police get here.  Look at all this.

15  Ripped up, thrown.  When I opened my screen door, pushed it

16  all here.  I don't know what all's underneath there.

17  There's my programming cable for my ham radio.  I hope this

18  is not a part of my ham -- no.  I don't know what that is.

19  Lord -- oh, what the -- oh, shoo- -- and most disturbing --

20  what the hell was this?  What kind of sign are you sending

21  me here?  I know who most likely did this.  There's two

22  people who ride together, Cooper Wilson and David Collins.

23  They live in Wylie and Garland.  Oh, shi- -- what the hell?

24  Who the fuck di- -- who does this kind of stuff?  I'm gonna

25  contact my attorneys after the police get here.  I'll



1   record that entire -- look at this.  I didn't want my

2   children to see this.  My wife is extremely upset.  How are

3   we supposed to feel safe in our new -- in our new home with

4   this kind of crap?  I don't want to touch anything.  This

5   is our neighborhood.  This is a very nice neighborhood.  A

6   lot of these houses have security cameras.  I hope to God

7   one of these security cameras caught the vehicle coming and

8   going, whenever it was.  I can't believe my dog didn't hear

9   anything.  I was up till 12:30 watching TV because I

10  couldn't sleep last night, as usual, because of all the

11  stress.  Because I got hurt on the job.  Got two rotator

12  cuff tears, all kinds of other body injuries that they're

13  -- Liberty Mutual Insurance Company is not paying for.  Or

14  they're trying to say that it's not related to the injury

15  when it's a 65-pound industrial server that fell -- that I

16  caught magically.  How could I -- I don't know.  I -- I

17  think all this is related.  They -- they ha- -- they have

18  to be working in concert.  This right here -- that --

19  that's a terroristic threat.  That's a direct threat to me

20  or my family.  I'm gonna put up security cameras this week.

21  If any further things happen, I'm gonna document it.  This

22  will be a part of the documentary.  This is -- I'm gonna

23  have to get a restraining order against Darling

24  International and its em- -- employees.  I don't know how

25  well this is re- -- getting this.  Right there -- see if it



Case 2:22-cv-00422-DBK-LMD Document 10 Filed 09/02/06/23 DC SD Colorado Page 21 of 26

1   -- James Goode, Specialist C4R, Texas Army State Guard.

2   Texas (sic) Operations Technology.  That's C4ISR magazine.

3   Can't get that.  This is some kind of frickin' joke.  A

4   bunch of redneck idiots.  And I say that, listening to the

5   recordings and all that.  As soon as everybody's off to

6   church, I'm calling the police and -- this is all going

7   legal.  I'm sending this to FOX 4 News.  This is -- this --

8   this is unbelievable.  I ca- -- who the hell does this kind

9   of stuff?  Look at this.  I've got a 10-year-old daughter,

10  a 3-year-old son.  Those are their rooms right there.

11  Right there.  Oh, oh.  Ow.  That should be enough video.

12  Hopefully -- this light isn't very good.

13  Un-freakin-believable.  I know this isn't the crime of the

14  century to the police but -- I -- I have friends in the DHS

15  and -- oh, crap, I stepped on that.  If the documentary --

16  if making friends of politicians -- maybe they can get some

17  fingerprint dusting of all this.  Depending on -- I'm gonna

18  make sure the police know the seriousness and -- of all of

19  this.  This is all gonna be bagged with gloves and -- I'm

20  gonna scout the neighborhood for security cameras and talk

21  to neighbors and see if I can get some video if the police

22  do not.  They probably will just take a report.  I'm gonna

23  go write down all the names and numbers of all the people

24  involved.  Un-freakin-believable.  I -- I just boxed up and

25  sent all of their iPad, computer, iPhone and all that.  And



Case 2:22-cv-00422-DBK-MLD Document 108 Filed 09/08/06/23 DC SLC Colorado Page 22 of 26

```
 1  like a freakin' idiot, I sent my new address asking them to
 2  please send all of my belongings that they've been holding
 3  onto.  Oh.  Oh, shoo- -- my shoulder.  Oh.  And this is how
 4  they deliver it.  Minus my ham radio, minus my -- oh,
 5  several things.  I've got the list and the e-mails that I'm
 6  gonna hand over -- I'm gonna go print it out now.  Look at
 7  this.  The -- and this is after I've inform- -- I -- I was
 8  discriminated against after I informed them that I had a
 9  traumatic brain injury, that I have epilepsy, and complex
10  post-traumatic stress disorder.  It's not combat-related
11  PTSD.  It's a different type.  There's many types but --
12  people, in their ignorance, talking -- people -- oh.  Well,
13  the audio and -- recordings and stuff that I have for the
14  -- this -- this is the last straw.  This is -- this is a
15  threat to my family.  This is unbelievable.
16              Hi.  Do y'all live there?  Did y'all see
17  anything unusual last night?
18              UNKNOWN MALE:  No.
19              MR. GOODE:  Okay.  I'm -- I'm gonna be
20  calling the police.  I had a little vandalism incident.  I
21  -- I'm recording it.
22              UNKNOWN FEMALE:  Oh.  What happened?
23              MR. GOODE:  A -- a company I used to work for
24  had all of the possessions in my desk and -- they're a
25  bunch of redneck idiots.
```



JAMES GOODE                                          May 04, 2014
TRANSCRIPTION OF YOUTUBE VIDEO                             6

```
 1              UNKNOWN FEMALE:  Oh.
 2              MR. GOODE:  And they tore it all up and
 3   dumped it on my front porch last night at some point.
 4              UNKNOWN MALE:  Wow.
 5              UNKNOWN FEMALE:  Wow.  Sorry.
 6              MR. GOODE:  Yeah.  That's okay.  I was just
 7   curious if you happened to see any- -- or hear anything
 8   last night.
 9              UNKNOWN MALE:  I was up till 1:30 so --
10              MR. GOODE:  Yeah, I was up till 12:30.  So it
11   had to have happened like early morning.
12              UNKNOWN FEMALE:  Yeah, must have.
13              UNKNOWN MALE:  I came out with the dog around
14   1:30.
15              MR. GOODE:  Okay.
16              UNKNOWN MALE:  It was all dark and quiet.
17   (Inaudible portion.)
18              MR. GOODE:  Okay.  Thank you.
19              UNKNOWN FEMALE:  Yeah.
20              UNKNOWN MALE:  Sure.
21              MR. GOODE:  My name's Corey -- Corey, by the
22   way.
23              UNKNOWN FEMALE:  Corey?
24              MR. GOODE:  Yeah.  We just moved in like two
25   and a half weeks ago.
```



```
 1              UNKNOWN FEMALE:  Oh.  Okay.  We just -- we've
 2   only been here about three or four months.
 3              MR. GOODE:  Okay.  Yeah, I've got a
 4   3-year-old and a 10-year-old --
 5              UNKNOWN FEMALE:  Oh, great.
 6              MR. GOODE:  -- so --
 7              UNKNOWN FEMALE:  Well, sorry to hear that
 8   but --
 9              MR. GOODE:  Okay.  All right.  Thanks for the
10   information.
11              UNKNOWN FEMALE:  Yeah.  Have a good day.
12              MR. GOODE:  You, too.  Thank you.
13              All right.  I guess it's all the video I
14   need.  See if there's any -- freakin' crackers or
15   something.  Oh, oh.  Nothing in the mailbox.  They came --
16   that's just ballsy.  They had to have been drinking.  So
17   timeline had to have been after 1:30 a.m.  And they came
18   right up to my house.  Right freakin' up to my house.  Put
19   a bullet on my kitchen window stoop here.  Looks like a --
20   what is that?  Like a -- like -- I don't have my glasses
21   on.  A .357 or a .38 or -- I don't know.  All right.
22   That's enough.  Give a copy of this to the cops, too.  Big
23   mistake, guys.  Big mistake.  I hope I got all this.  My
24   tool kit, tools.  Oh.  Oh, my shoulder.  Shit.  Oh, God.
25   They fired me five or six days illegally after I was hurt
```



Case 2:22-cv-00422-DBD-KLM Document 30-8 Filed 09/02/23 USDC Colorado Page 25 of 26

```
 1   on the job.  They sent me -- one man to do the job of two

 2   to three people, loading 65-pound servers onto server

 3   racks.  I've got the videos of -- and photos of the server

 4   type and all that that I will add as well.  They're

 5   negligent in that.  And they did that right after I had had

 6   retina surgery -- retina detachment surgery.  Oh, Marissa.

 7   I'm so sorry.  Oh.  I know -- I don't know whether to tell

 8   them or not.  They're -- all right.  Ending video.

 9               (Video concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1     I, Charlotte Haynsworth, a Certified Shorthand

2  Reporter in and for the State of Texas, do hereby certify

3  that the foregoing is a correct transcription from the

4  YouTube video taken on May 4, 2014.

5     I further certify that I am neither counsel for,

6  related to, nor employed by any of the parties, and further

7  that I am not financially or otherwise interested in the

8  outcome of this matter.

9     I further certify that the transcription fee of

10  $_____ was paid/will be paid in full by

11  _____.

12  *Charlotte Haynsworth*

13  _____          05/05/2014
   CHARLOTTE HAYNSWORTH, CSR                   Date
14  Esquire Deposition Solutions
   1700 Pacific Avenue, Suite 1000
15  Dallas, Texas  75201
   Cert. No. 7359
16  Cert. Expires:  12/31/14
   (214) 257-1436
17

18

19

20

21

22

23

24

25



800.211.DEPO (3376)
EsquireSolutions.com